José Lugo, Plaintiff and Appellant, *v.* Self Auto Corporation, etc., Defendant and Appellee.

No. 7203. Argued April 9, 1937.—Decided July 7, 1937.

*Pascasio Fajardo Martínez* for appellant. *Emilio S. Belaval* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an action for damages, resulting from an automobile accident, which was decided against the plaintiff be-

cause in the estimation of the district court it had not been proved that the legal relation claimed to exist between the parties did actually exist and without which the defendant was not liable for the damages suffered by the plaintiff.

The conclusion of said court was based upon the evidence referred to in its statement of the case and opinion, thus:

"Considering as a whole the evidence introduced at the trial, this court thinks that the negligent acts of the chauffeur who was driving the vehicle in question at the time of the accident have been satisfactorily proved and that such negligence was the cause of the accident and of the injuries sustained by the plaintiff specified in the complaint.

"This court is also of the opinion that the defendant corporation is not a concern engaged in the public transportation of passengers and further considers that it has been satisfactorily proved that the chauffeur who was driving the automobile in question at the time of the accident was not acting as a chauffeur of the defendant, nor was he under the orders of the latter."

Feeling aggrieved by that judgment, the plaintiff took an appeal, and he has assigned in his brief eight errors. The first five relate to the question of whether or not the doctrine of *respondeat superior* is applicable to this case, the sixth and seventh refer to the admission of evidence, and the eighth concerns the award of costs. After a careful study of the facts and the law we think that only the eighth error was committed.

The first witness who testified was the plaintiff, José Lugo. He stated that in December 1930, he returned from the United States and upon landing, at one of the piers in San Juan, he met Daniel Morales with a five-passenger car, license P–2351, that is, in his judgment, a public car, and he hired the said Daniel Morales to take him to Mayagüez for the sum of thirteen dollars; that during the trip Morales was traveling at an excessive speed and he told him to go slower; that when the hat of his wife was blown off and the brakes were applied in order to stop the car, the driver could only do so at a distance of forty or fifty meters

"due to the speed at which he was traveling and to the defective condition of the brakes"; that Morales drove moderately for a while but later began to run fast and about three kilometers from Aguadilla, upon reaching a curve, the car skidded and collided with a tree, the witness receiving several injuries.

The concluding part of his testimony literally copied reads as follows:

"That he hired the car from Daniel Morales and that said Daniel Morales at the pier in San Juan asked him where he was going and when he told him that to Mayagüez, he offered to take him in his car and then they made a contract; that upon reaching Mayagüez he paid thirteen dollars for the trip and a dollar more as a tip. That he did not make the contract for the car with the Self Auto Corporation but he did so with the chauffeur. That when he arrived from his trip to the United States the chauffeur Morales was standing in front of the pier with his car and at that moment the latter offered the car to transport him and his luggage."

Then Rosa M. de Lugo, Doctor Francisco J. Blasini, and Attorney Gilberto López de Victoria testified. The first of these witnesses corroborated her husband, the plaintiff; the second treated and described the wounds of the latter; and the third identified two letters, one which he wrote to Luis M. Pagán, the manager of the defendant, concerning the claim of the plaintiff, and another which contains the answer of the defendant by its manager.

Besides these two letters, the plaintiff offered as documentary evidence a certificate of the Commissioner of the Interior to the effect that at the time of the accident the car P–2351 was registered in the name of the defendant.

The latter did not deny that it was the owner of the car; on the contrary, it admitted such fact. Its defense was that it leased it to Morales and that Morales was not its agent. In order to prove it, it presented at the trial a certified copy of one of its articles of incorporation, the contract of lease, and the testimony of Pagán and Morales.

Said certificate was issued by the Executive Secretary of Puerto Rico and tends to prove that, in the articles of incorporation of defendant, there appears the following clause:

"IV. That the object for which said corporation is organized is as follows: The purchase and sale of automobiles and their accessories; leasing of the same for private transportation; establishment of automobile repair and paint shops; exploitation of the business of petroleum and its derivatives; and purchase of lands and buildings for the business of the Company."

The court admitted this document over the objection of the plaintiff, which was based on the grounds that the certificate was not complete and that it contradicted the act performed by defendant in obtaining public license plates for its car.

We have examined the certificate and in our judgment it contains all the external formalities required by law. The appellant has not cited to us any law or decision which would preclude an officer who has in his custody a document from issuing a certified copy of a part thereof. What happens in such a case is that the copy in question only shows the existence of that part of the document which is transcribed, leaving open to doubt or to be proved by the other party the existence of some other part of the same document which would contradict, modify, or explain the part transcribed.

Nor was the other ground or, objection well taken. It went to the weight of the evidence and the court was at the moment admitting the same. Besides, even though the court had been bound to determine at that moment the full scope of the certificate of the Commissioner of the Interior already admitted and that of the certificate of the Executive Secretary offered in evidence, it would not have erred in admitting the latter, since the contradiction charged by the appellant did not in fact exist, as we shall see later.

■ The appellant also objected to the admission of the contract of lease, because it was a private document which could not prejudice a third person.

The contract was introduced in evidence after being identified by Luis M. Pagán as the one entered into between the defendant and Morales. Morales also identified it later. Subject to the credit which the court might give to the testimony of these persons, the document was admissible. There was no error.

Now, from the evidence admitted, to which the lower court accorded full credence, without it having been shown that there was any justifiable reason for it to act otherwise, we find that the defendant, which is a corporation engaged in various activities including the renting of automobiles for private transportation, prior to the day of the accident rented to Daniel Morales, at a rental of three dollars a day, the automobile involved in this case which had public license plates, and that Morales having possession of the rented car, contracted directly with the plaintiff regarding the trip to Mayagüez, without the plaintiff inquiring whether he was the owner, lessee, or employee of the owner of the automobile.

The accident having occurred by reason of the negligence of Morales in operating the car, is the owner thereof, the Self Auto Corporation, which is the only defendant in this case, liable for the damages caused thereby?

Section 1802 of the Civil Code (1930 ed.) provides that any person who by an act or omission causes damage to another by his fault or negligence shall be liable for the damage so done; and then follows section 1803, which says the obligation imposed by the preceding section is enforceable, not only for personal acts and omissions, but also for those of persons for whom another is responsible, and specifies certain cases including that of the owners or directors of any establishment or business with respect to the damages caused by their employees while engaged in the service in which employed, or on occasion of the performance of their duties.

Does the instant case fall within the scope of those provisions? In our judgment, it does not, as Morales was not

an employee of the defendant but a person to whom the defendant rented the automobile. After Morales obtained possession of the vehicle by virtue of the lease and the plaintiff contracted directly with him in regard to his transportation to Mayagüez, the obligations arising upon such a contract bound only Morales and the plaintiff.

It is true that said vehicle was a part of the business of leasing automobiles for private transportation and that it was in fact leased, but it is also true that it was not leased to the plaintiff to transport him to Mayagüez but to Morales for him to use it in private transportation.

From the fact that the defendant had taken out public license plates for its automobile, the plaintiff concludes that the defendant, contrary to what is stated in one of the clauses of its corporate charter, was not engaged in the business of private transportation but was a public carrier; but we think that, although it can not be denied that said fact renders the solution of the problem more difficult, it does not have the scope attributed to it.

It is true that section 1 of Act No. 55 of 1921 (Session Laws, p. 422) provides that—

" 'Public Service Automobile' for the purpose of this Act, shall mean any motor vehicle which, for compensation or pay, shall engage in the transportation of passengers, merchandise or materials of any kind, and the said vehicles shall not operate without paying the additional fee hereinafter provided for automobiles acting as public carriers."

But, in our judgment, from the fact that the defendant, in order to be able to rent its car to be used by the person renting it in the private transportation of passengers, had paid the additional fees fixed by law for automobiles acting as public carriers, it can not be concluded that it was thereby constituted into a public service company for the transportation of passengers for pay. Its business was that of renting cars to be used by the persons renting the same in the

manner they wished or could, and not that of transporting passengers.

Besides Act No. 55 of 1921 which has been cited, there must be considered another statute which is Act No. 70 of 1917 (Session Laws, vol. II, p. 432) that defines the term "common carrier" as including any natural person or body corporate engaged for profit in the conveyance of passengers or property, or both, in Puerto Rico, by any mean of locomotion, and the Motor Vehicle Regulations issued by the Public Service Commission and approved May 24, 1927, the first rule of which requires for the existence of the status of a common carrier that the vehicles used should have a capacity of more than seven passengers.

In Puerto Rico, in order to engage regularly in the public transportation of passengers for pay, it is necessary to obtain a franchise from the Public Service Commission and to comply with other requirements of the law and of the Regulations of the Commission, and it seems that there are other automobiles which by paying the necessary fees to obtain public license plates, are occasionally engaged in the transportation of passengers, without it being necessary for them to obtain any authority from the commission, this class of business being characterized private transportation. It is among the latter vehicles that the automobile of the defendant in this case must be classified, which automobile was in the possession of Daniel Morales, the lessee thereof.

The decisions cited by the appellant are inapplicable. They refer to concerns engaged in the transportation of passengers by freight through their own employees, not to those engaged in the renting of automobiles to be used only by the persons renting them personally or through their servants or employees.

On the contrary, there is a case cited by the appellee which presents a similar situation to that arising from the facts in the instant case. We refer to the case of *Atkins* v. *Points*,

88 So. 231 decided by the Supreme Court of Louisiana, in which, to quote from the syllabus, the following doctrine was laid down:

"Where the owner rented motorcars to chauffeurs who paid him a stipulated sum per day, but used the cars for their own purposes, the owner is not responsible for injuries to a third person because of the negligence of a chauffeur; for, no relation of master and servant bringing into operation, the doctrine of respondent superior existed."

The appellant insists that the liability of the defendant would always arise because the accident was due not only to the negligence of the chauffeur but to the defective condition of the brakes, which according to the latter, the lower court declared as proved.

We have carefully examined the entire statement of the case and opinion and we do not think that from the contents thereof it can be concluded that the brakes of the automobile were in a defective condition. The attention of the court was only fixed on the negligence of the chauffeur. And after examining the evidence of the plaintiff on this point, the same does not seem to us to be sufficient. Moreover, the car had been rented more than a month before the accident occurred.

Perhaps this case reveals a situation which must be corrected. Perhaps the so-called private transportation should be regulated so that it will not be performed by persons who in the end turn out to be irresponsible, by requiring a bond, insurance, or a penalty. Perhaps some security should be required from the persons or companies engaged in the business of renting automobiles. But under the present state of the law, in view of the attendant circumstances, we are compelled to decide that the lower court was correct in holding that no legal relation (*nexo jurídico*) existed between the defendant and the plaintiff establishing any liability for the damages claimed.

However, we do not think that the court should have taxed the plaintiff with costs. The question at issue was a new and doubtful one. There was no obstinacy, especially in view of the answer which the defendant gave to the letter from plaintiff's attorney, and in which it denied its liability but based on the plaintiff's acquiescence in releasing it therefrom and on the assertion that the accident had been a fortuitous one, and without even insinuating the defense which it subsequently set up with success.

In virtue thereof, the judgment appealed from must be modified by eliminating therefrom the award of costs and substituting therefor the pronouncement "without special imposition of costs," and as so modified, the judgment is affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.